UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

IVAN CORTES-RUEDA,

Plaintiff,

v.

STEVE SLOAN, MATTHEW J. STEARNS WOODBURN POLICE DEPARTMENT, CITY OF WOODBURN, and AARON DEVOE,

Defendants.

Case No. 6:22-cv-00410-AR

**OPINION AND ORDER TO AMEND**

---

**ARMISTEAD, United States Magistrate Judge**

Plaintiff Ivan Cortes-Rueda, an adult-in-custody at Snake River Correctional Institution and representing himself, alleges in this § 1983 civil rights action that after he was taken to Salem Hospital for treatment of a gunshot wound in 2022, he was falsely arrested and charged with assault, robbery, and burglary. Cortes-Rueda filed a complaint against defendants Woodburn Police Officers Steve Sloan and Matthew J. Stearns for failing to advise him of his *Miranda* rights and falsely arresting him. The court stayed this action while his underlying criminal case

proceeded as permitted by *Wallace v. Kato*, 549 U.S. 384, 393 (2007). About two years later, the underlying charges were dismissed.

Before the court is Cortes-Rueda's amended complaint, which the court construes as a motion for leave to amend. Cortes-Rueda seeks to include additional factual detail, bring claims premised on the dismissed charges, and to name the Woodburn Police Department (WPD), the City of Woodburn, and Woodburn Police Officer Aaron Devoe as defendants. Also pending before the court is defendants' motion to dismiss Cortes-Rueda's original complaint.[1] As explained below, Cortes-Rueda's motion is GRANTED and defendants' motion against the original complaint is denied as MOOT.[2] As permitted by 28 U.S.C. §§ 1915A and 1915(e), the court has screened the amended complaint and Cortes-Rueda also is ORDERED to file a second amended complaint that incorporates the court's rulings described below.

---

[1] Plaintiff also filed a motion for summary judgment in which he asks the court to enter a default against defendants under Rule 55 for "failing to respond to plaintiff's complaint and summons." (Pl.'s MSJ, ECF 51.) The court construes that motion as a motion for entry of default and it is DENIED. Defendants Sloan and Stearn have filed a motion to dismiss and, therefore, have appeared and defended against this action; entry of default under Rule 55 is inappropriate.

Defendants' opposition to plaintiff's motion for leave to amend argues in the alternative that the amended complaint should be dismissed on the same grounds. (Defs.' Opp'n, ECF 50.) Because the court grants plaintiff's motion and anticipates that he will comply with the court's order to file a second amended complaint, defendants' alternative motion is denied as MOOT, with leave to refile.

[2] Not all parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c), but magistrate judges have authority to grant motions for leave to amend because such a result is considered non-dispositive. *Hoffman v. USAA Cas. Ins.*, 3:24-cv-00984-SB, 2025 WL 1892782, at *1 n.1 (D. Or. July 9, 2025) (collecting cases so recognizing).

## PROCEDURAL BACKGROUND

Cortes-Rueda filed a complaint on March 11, 2022, and the court granted his IFP application on April 25, 2022. (ECFs 1, 2, 7.) In that complaint, the court understood Cortes-Rueda to allege two claims against Sloan and Stearns: (1) they failed to advise him of his *Miranda* rights before they questioned him, and (2) Sloan falsely arrested him. As required by 28 U.S.C. § 1915A, the court screened the complaint and issued an Order to Amend, describing the pleading's deficiencies. (OTA, ECF 8.)

Soon after, at Cortes-Rueda's request, the court stayed proceedings under *Wallace* until his state prosecution was resolved. (ECFs 9, 10.) Nearly two years later, Cortes-Rueda submitted a copy of the judgment of dismissal and the court lifted the stay on February 5, 2024. (ECFs 24, 27.) That same day, the court directed Cortes-Rueda to complete summonses and U.S. Marshal Instruction Forms and to return them to the court so that the Clerk of Court could issue process for Sloan and Stearns. (ECF 28.)

Cortes-Rueda promptly returned the summonses, however, he failed to correctly complete them, and on June 7, 2024, the court instructed Cortes-Rueda to complete new summonses and return them so that the Clerk of Court could issue process and direct service. (ECFs 29, 31.) Cortes-Rueda returned the summonses on June 11, 2024, yet they remained incomplete. (ECFs 32, 34.)

On November 13, 2024, Cortes-Rueda moved for an extension of time to file an amended complaint. (ECF 33.) Four months later, on March 24, 2025, the court advised Cortes-Rueda that

his request pertained to a different case he was pursuing,[3] that there was no pending order to amend in this action, and that he needed to include his name and address on the proposed summonses and return them to the court for service. (ECF 34.) Cortes-Rueda returned the corrected summonses, and they were issued on April 23, 2025. (ECFs 36, 37, 38.) About two weeks later, Cortes-Rueda again asked for permission to file an amended complaint that would include additional information and add new defendants.[4] (ECF 42.) On May 21 and 22, 2025, returns of service for Sloan and Stearns were docketed. (ECFs 40, 41.)

On June 20, 2025, Sloan and Stearns moved to dismiss the original complaint on two grounds: (1) the court lacks personal jurisdiction due to untimely service under Federal Rule of Civil Procedure 4(m), and (2) Cortes-Rueda fails to state plausible claims. (ECF 42.) Cortes-Rueda responded to that motion by asking for permission to amend this complaint due to the "delay in processing my complaint" while he was in jail, and that defendants have responded to "a complaint that should've been amended." (ECF 45.)

Two months later, Cortes-Rueda filed an amended complaint that the court construes as a motion for leave to amend. (ECF 47.)[5] Defendants oppose amendment based on futility and undue delay.

---

[3] At that time, plaintiff also was suing Salem Hospital and several of its staff arising out of the January 2022 events. *Cortes-Rueda v. Salem Hospital*, Case No. 3:23-cv-01914-JR. That case was dismissed and affirmed on appeal.

[4] Plaintiff's requests to file amended complaints did not comply with Local Rule 15-1(b), requiring that copies of the proposed amended complaints accompany such motions. (ECFs 33, 39.)

[5] Plaintiff also submitted proposed summonses for the new defendants; they have not yet been served. (ECF 48.)

## LEGAL STANDARD

After a responsive pleading is filed, under Federal Rule of Civil Procedure 15(a)(2), a party may amend its pleading "only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). "Leave to amend shall be freely given when justice so requires, and this policy is to be applied with extreme liberality." *Bacon v. Woodward*, 104 F.4th 744, 753 (9th Cir. 2024) (quoting *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014) (citation modified)). Generally, the court must grant leave to amend unless one or more of the following factors is present: undue delay, bad faith, repeated failures to cure deficiencies, undue prejudice to the opposing party, or futility of amendment, with prejudice being the most important factor. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Absent prejudice, or a strong showing on the other *Foman* factors, "there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Id.*

Further, when a plaintiff proceeds without attorney representation (*pro se*), the court must construe the pleadings liberally and afford the plaintiff the benefit of any doubt. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Unless the complaint's deficiencies clearly cannot be corrected by amending the complaint, a *pro se* litigant is permitted to amend it. *Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc); *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 854 (9th Cir. 2016).

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

## DISCUSSION

### A. *Cortes-Rueda's Motion for Leave to Amend*

In the amended complaint, Cortes-Rueda includes additional factual allegations, which at this stage in the litigation, the court accepts as true. After Cortes-Rueda was the victim of a shooting at a Woodburn, Oregon home on January 1, 2022, he left the scene to seek medical attention and was found by a friend, who called paramedics. Paramedics and Marion County Sheriff's officers responded to the call and found Cortes-Rueda with a gunshot wound to his lower right buttock. Cortes-Rueda was taken to Salem Hospital where his injuries were treated. He remains in a wheelchair due to his injuries. (Am. Compl. at 6, ECF 47.) According to Cortes-Rueda, defendants failed to investigate exculpatory evidence, including a bullet that they recovered from his wallet. (*Id.* at 9.)

Stearns interviewed unreliable witnesses at the scene of the shooting who falsely told Stearns that Cortes-Rueda entered the home to commit robbery, assault, and burglary. (*Id.* at 5.) Officer Devoe seized Cortes-Rueda's clothing from Salem Hospital staff. (*Id.* at 6.) While in the hospital, Cortes-Rueda was not advised of his *Miranda* rights or that he was suspect in a crime. (*Id.* at 9.) Stearns falsely attested that Cortes-Rueda posed an imminent threat to the public to detain him, to cause unnecessary medical treatment to be performed, and to obtain a urine sample without his consent. Also alleged by Cortes-Rueda is that Stearns' false attestation ensured that WPD would be notified before he was discharged from the hospital. (*Id.* at 11.) While in the hospital, on January 3, 2022, Stearns attempted to interrogate Cortes-Rueda, falsely contending that he was not a suspect, but rather was a shooting victim. (*Id.* at 17.)

On January 5, 2022, Cortes-Rueda was arrested by Sloan and transported to Marion County Jail. (*Id.* at 6.) He was indicted on two counts of Robbery in the First Degree, three counts of Assault in the Second Degree, and one count of Burglary in the First Degree and was held in jail awaiting trial for 20 months. (*Id.*; Pl.'s Supp., ECF 24.)

The amended complaint names WPD, the City of Woodburn, Sloan, Stearns, and Devoe as defendants, and brings the following claims: false arrest/false imprisonment, malicious prosecution, fabrication of evidence, abuse of process, a *Miranda* violation, and *Monell* liability. Cortes-Rueda broadly alleges that his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution, and Article I, section 9 of the Oregon Constitution were violated.

Defendants advance three futility arguments opposing amendment: (1) the court lacks personal jurisdiction over them due to untimely service, (2) Cortes-Rueda's claims are time-barred, and (3) he fails to state cognizable claims. (ECF 50.) The court discusses each in turn.

First, defendants contend that the court lacks personal jurisdiction over them due to untimely service under Rule 4. Defendants highlight that the complaint was filed on March 11, 2022, and returns of service were docketed on May 21, 2025, which they assert is three years too late. Also argued by defendants is that the lengthy stay of proceedings has no bearing on service. Because Cortes-Rueda did not request or receive an extension of time to serve defendants, in their view, personal jurisdiction is lacking. The court is not persuaded.

Rule 4 requires that a complaint be served within 90 days after filing. FED. R. CIV. P. 4(m) (generally requiring service within 90 days). The court may, however, extend the time for

service if a plaintiff demonstrates "good cause." *Id.* A careful review of the docket reveals that good cause exists here.

After granting Cortes-Rueda IFP status, the court was obligated to screen the complaint under 28 U.S.C. § 1915A. And when a plaintiff is permitted to proceed IFP, service of the defendants is directed by "officers of the court" and handled by the United States Marshals under 28 U.S.C. § 1915(d). *Warren v. Ruffcorn*, No. Civ.00-0721-HA, 2001 WL 34043449, at * (D. Or. Sept. 18, 2001) (discussing that screening "mandated by § 1915A suspends service" and the IFP review "has the practical effect of causing delay within the court that is not attributable to the incarcerated plaintiff" and that "the defendants do not receive formal notice of the lawsuit until the court either requests waiver of service, or serves them with the summons and amended complaint") (citing 28 U.S.C. § 1915(d) and FED. R. CIV. P. 4(c)(2)); *see also Lockhart v. Holiday Inn Exp. Southwind*, 531 F. App'x 544, 548-49 (6th Cir. 2013) (stating that "issues relating to service of process are out of the hands of a plaintiff proceeding *in forma pauperis* until the district court approves such service"). Because the court did not lift the stay until February 2024 and directed service of process on March 24, 2025, contrary to defendants' contention, service was not three years late. (ECFs 27, 34.)

And as asserted by Cortes-Rueda, there were lengthy "delay[s] in processing his complaint." (Pl.'s Resp., ECF 45.) As detailed above, Cortes-Rueda complied with the court's directives to complete the summonses, but after doing so, his proposed summonses appeared to languish for months before the court issued process. (ECFs 31-32, 34, 40-41.) Therefore, good cause to extend the time for service exists under the unique facts of this case. Accordingly, the lack of personal jurisdiction for untimely service does not demonstrate futility here.

Second, defendants argue that adding new defendants is futile because the two-year statute of limitations bars claims against them. Defendants remonstrate that all of Cortes-Rueda's claims stem from the events surrounding his arrest in January 2022. Claims against WPD, the City, and Devoe, in defendants' view, would not relate back to the date of the original complaint under Rule 15(c) because there are no allegations about mistaken identities concerning them.

Defendants do not dispute that the original complaint was filed within the statute of limitations, and the court agrees that there are no allegations of mistaken identity in the amended complaint. *See Sarnowski v. Peters*, No. 2:16-cv-00176-SU, 2016 WL 10705318, at *3 (D. Or. Sept. 8, 2016) (denying Rule 15(c) motion to add new defendants because there were no allegations of mistaken identity that permitted relation back under federal or state law and thus claims against new defendants were time-barred). Yet not all claims are premised on the January 2022 events. Cortes-Rueda seeks to add several claims premised on dismissal of his underlying criminal charges, which may have accrued later. *See Mills v. City of Covina*, 921 F.3d 1161, 1166, 1168 (9th Cir. 2019) (holding that malicious prosecution and *Monell* liability claims did not accrue until conviction was overturned). Even so, he brings those new claims against Sloan and Stearns, which do appear to relate back to his original filing. Because it is not clear that all claims are time-barred, amendment is not futile.

Third, defendants oppose amendment because Cortes-Rueda fails to state any viable claims. Denial of leave to amend on futility grounds is "rare." *Cesario v. Biocept, Inc.*, 23-CV-1803-WQH-BLM, 2025 WL 525120, at *38 (S.D. Cal. Feb. 18, 2025). This is especially true where an unrepresented plaintiff has not had the benefit of the court's ruling on a pending complaint. *Id.*

The court acknowledges defendants' arguments that Cortes-Rueda's amended complaint may be subject to dismissal by way of dispositive motion. Yet defendants downplay the dismissal of the underlying charges and do not grapple with his new claims based on those facts. As discussed in more detail below, the court cannot yet say with certainty that further amendment is futile. And the court has an obligation to provide self-represented litigants a meaningful opportunity to plead their case. *Lopez*, 203 F.3d at 1131 ("The rule favoring liberality in amendments to pleadings is particularly important for the *pro se* litigant. Presumably unskilled in the law, the *pro se* litigant is far more prone to making errors in pleading than the person who benefits from the representation of counsel.") (citation modified). In exercising its discretion here, the court also is "guided by the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir.1981).

Also unconvincing is defendants' undue delay argument. As noted above, the case was stayed for two years and other delays were not solely of Cortes-Rueda's making. And despite delays, the case remains in the pleading stages. *DCD Programs Ltd. v. Leighton*, 833 F.2d 183, 187-88 (9th Cir. 1987) ("[D]elay alone is not sufficient to justify the denial of a motion requesting leave to amend.").

Notably, defendants do not raise any prejudice arguments, the most crucial factor in the court's analysis. *Eminence Capital*, 316 F.3d at 1051 (stating that prejudice "carries the greatest weight"). Prejudice is generally mitigated where the case remains in its early stages, such as where discovery has not closed, no trial date is set, and no pretrial conference has occurred.

*Calderon v. Tulare Reg'l Med. Ctr.*, No 1:17-cv-0040-BAM, 2018 WL 4473626, at *5 (E.D. Cal. Sept. 17, 2018). Such is the case here.

In short, given the Ninth Circuit's presumption in favor of amendment under Rule 15 and defendants' failure to carry their burden regarding prejudice or any other *Foman* factors, Cortes-Rueda's motion for leave to file an amended complaint is granted.

**B. *Order To Amend***

Having granted Cortes-Rueda leave, the court now examines the amended complaint. The court's screening obligation includes determining whether a plaintiff's claims are capable of being tried by this court, or in other words, are cognizable claims. 28 U.S.C. §§ 1915A, 1915(e) (requiring the court to screen a complaint to assess if it is frivolous or malicious, fails to state a claim, or seeks monetary relief from a defendant who is immune from such relief); *Stephens v. Biden*, No. 3:23-cv-00817-SB, 2024 WL 554274, at *1 (D. Or. Jan. 26, 2024), *adopted*, 2024 WL 665177 (Feb. 15, 2024) (after granting IFP status, first amended complaint remained subject to screening under 28 U.S.C. § 1915(e), collecting cases so stating).

The court is generous in construing the pleadings of self-represented plaintiffs, giving the plaintiff the benefit of doubt. *Erickson*, 551 U.S. at 94. Self-represented plaintiffs are "entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Garity*, 828 F.3d at 854. "Although a *pro se* litigant . . . may be entitled to great leeway when the court construes his pleadings, those pleadings nonetheless must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong." *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995).

To state a § 1983 claim, a plaintiff must allege two essential elements: (1) violation of a constitutional right; and (2) that the violation was committed by a person acting under color of state law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). To be individually liable under § 1983, a person must participate in the alleged deprivation. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Thus, to sustain a § 1983 claim, Cortes-Rueda must allege facts, not simply conclusions, indicating each defendant's personal involvement in the deprivation of his civil rights. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000).

Cortes-Rueda brings the following claims in his amended complaint: false arrest/false imprisonment, malicious prosecution, fabrication of evidence, abuse of process, a *Miranda* violation, and *Monell* liability. Cortes-Rueda broadly alleges violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution, and Article I, section 9 of the Oregon Constitution. Also in the amended complaint are three new defendants: WPD, the City of Woodburn, and WPD Officer Aaron Devoe. Cortes-Rueda's amended complaint has several deficiencies that must be corrected in a second amended complaint for this action to proceed.

**1. Woodburn Police Department**

Cortes-Rueda adds WPD as a defendant in the amended complaint. WPD, however, is not a proper defendant under § 1983. Although individual state actors, local government units, or municipalities can be sued under § 1983, police departments are generally not considered suable entities. *See United States v. Kama*, 394 F.3d 1236, 1239-40 (9th Cir. 2005) (Ferguson, J., concurring) ("[M]unicipal police departments and bureaus are generally not considered 'persons'

within the meaning of Section 1983." (citing *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995))). Should Cortes-Rueda choose to file a second amended complaint, he cannot bring a § 1983 claim against WPD.

**2. City of Woodburn**

A municipality like the City of Woodburn may be liable for the deprivations of constitutional rights deriving from the execution of its policies or customs. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). To state a *Monell* claim against the City, Cortes-Rueda must allege facts that plausibly show: (1) he was deprived of a constitutional right; (2) the City of Woodburn had a policy; (3) the policy amounts to deliberate indifference to his constitutional rights; and (4) the policy was the moving force behind the constitutional violation. *Lockett v. County of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020). Cortes-Rueda also must show a "direct causal link" between the policy and the constitutional deprivation. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016) (en banc). In other words, "*Monell* claims thus require a plaintiff to show an underlying constitutional violation" to establish municipal liability. *Lockett*, 977 F.3d at 741.

Cortes-Rueda alleges that the City's inadequate supervision and training led to his false arrest, imprisonment, and prosecution and were the moving force his constitutional injuries. As further discussed below, as currently alleged, Cortes-Rueda has not pleaded plausible constitutional violations, and to the extent his *Monell* claim is premised on that conduct, he fails to state a plausible *Monell* claim. Additionally, Cortes-Rueda does not plead facts that tie his arrest, detainment, and prosecution to a specific City policy or custom, much less how the policy or custom was  deliberately indifferent to and the moving force behind those purported

constitutional violations. *See Castro*, 833 F.3d at 1076 (holding that municipality was deliberately indifferent when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need" (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). As currently alleged, Cortes-Rueda fails to plead a plausible theory of liability against the City. The court turns to his claims against WPD Officers Sloan, Stearns, and Devoe.

**3. false arrest/false imprisonment**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. CONST. AMEND. IV. "An arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008). "In the context of a § 1983 action, probable cause to arrest exists when there is a fair probability or substantial chance of criminal activity by the arrestee based on the totality of the circumstances known to the officers at the time of arrest." *Miller v. City of Scottsdale*, 88 F.4th 800, 804 (9th Cir. 2023) (quoting *Vanegas v. City of Pasadena*, 46 F.4th 1159, 1164 (9th Cir. 2022)) (citation modified). To prevail on a § 1983 claim for false imprisonment or wrongful detention, a plaintiff likewise must plead facts showing that there was no probable cause. *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998).

Probable cause is a complete defense to claims for wrongful arrest and false imprisonment. *Id.* ("To prevail on his § 1983 claim for false arrest and imprisonment [the plaintiff] would have to demonstrate that there was no probable cause to arrest him.");

*Hutchinson v. Grant*, 796 F.2d 288, 290 (9th Cir. 1986) ("A police officer has immunity if he arrests with probable cause"). "The issue is not whether the plaintiff was convicted, but whether probable cause supported his arrest in the first instance." *Carr v. City of Hillsboro*, 497 F. Supp. 2d 1197, 1213 (D. Or. 2007) (citation modified).

Cortes-Rueda asserts that Sloan, Stearns, and Devoe arrested him without probable cause because they failed to properly investigate the shooting and interviewed unreliable witnesses at the scene. (Am. Compl. at 5, ECF 47.) These unreliable witnesses, Cortes-Rueda alleges, falsely stated that a robbery occurred and wrongly identified him. Also alleged by Cortes-Rueda is that defendants failed to investigate exculpatory evidence (a bullet they recovered from his wallet) before arresting him. Although detailed allegations are not required at the pleading stage, Cortes-Rueda must include more facts than those provided here to show that his false arrest and imprisonment claims are plausible. He alleges no details about how defendants knew or should have known that the witnesses were unreliable and that the bullet was exculpatory based on the totality of the circumstances. If Cortes-Rueda files a second amended complaint, he needs to provide specific facts showing that probable cause was lacking.

**4. malicious prosecution**

State common law provides the elements of malicious prosecution. *Mills*, 921 F.3d at 1169. In Oregon, the elements of a malicious prosecution claim are: "(1) the institution or continuation of criminal proceedings, (2) by or at the insistence of the defendant, (3) termination of such proceedings in the plaintiff's favor, (4) malice, (5) lack of probable cause for the proceedings, and (6) injury or damages as a result." *Rose v. Whitbeck*, 277 Or. 791, 795, *modified on other grounds by*, 278 Or. 463 (1977); *Miller v. Columbia County*, 282 Or. App. 348, 360

(2016) (stating elements of malicious prosecution under Oregon law). *See also Thompson v. Clark*, 596 U.S. 36, 48-49 (2022) (discussing that § 1983 claims for malicious prosecution are properly alleged under the Fourth Amendment and do not require that a plaintiff affirmatively show innocence; "[a] plaintiff need only show that the criminal prosecution ended without a conviction").

"Additionally, to maintain a § 1983 action for malicious prosecution, a plaintiff must show that the defendants prosecuted him for the purpose of denying him [a] . . . specific constitutional right." *Mills*, 921 F.3d at 1169. Federal malicious prosecution claims "are not limited to suits against prosecutors, but may be brought . . . against other persons who have wrongfully caused the charges to be filed." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004). To bring a § 1983 claim against a non-prosecutor (like Stearns, Sloan, and Devoe) for malicious prosecution, the plaintiff must also allege specific facts showing that the defendant "improperly exerted pressure on the prosecutor," engaged in wrongful or bad faith conduct, or "was actively instrumental in causing the initiation of legal proceedings." *Id.* at 1067.

Cortes-Rueda alleges that all defendants lacked probable cause and falsified evidence. Further alleged by Cortes-Rueda is that they recovered a bullet from his wallet and failed to investigate that exculpatory evidence. (Am. Compl. at 9, ECF 47.) Although Cortes-Rueda pleads that the assault, robbery, and burglary charges against him were dismissed, as discussed above, he fails to put forth facts showing that there was a lack of probable cause. He alleges that defendants acted maliciously and with the intent to deprive him of his constitutional rights, but those allegations are conclusory and lack details about specific deprivations. Although Cortes-Rueda pleads that Stearns provided an affidavit to support his indictment (Am. Compl. at 17), he

fails to plead facts that plausibly could show Stearns did so for the purpose of depriving him of his constitutional rights. As for Sloan, Cortes-Rueda asserts that he failed to intervene and used his position of authority (Am. Compl. at 19-21), yet those conclusory allegations do not plausibly show that Sloan exerted pressure on the prosecutor or that Sloan acted for the purpose of depriving him of a constitutional right. As for Devoe, Cortes-Rueda alleges that he collected Cortes-Rueda's clothes at Salem Hospital without a warrant (Am. Compl. at 22), but he does not link that clothing to his prosecution. Further, Cortes-Rueda does not plead facts that could support an inference that Devoe controlled the prosecutor's decision-making, participated in his prosecution in bad faith, or acted for the purpose of depriving him of his constitutional rights. *Awabdy*, 368 F.3d at 1067. As currently pleaded, Cortes-Rueda fails to state a plausible malicious prosecution claim.

**5. fabrication of evidence**

"[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey,* 263 F.3d 1070, 1074-75 (9th Cir. 2001); *Richards v. County of San Bernardino*, 39 F.4th 562, 569 (9th Cir. 2022); *Spencer v. Peters*, 857 F.3d 789, 793 (9th Cir. 2017) ("The Fourteenth Amendment prohibits the deliberate fabrication of evidence by a state official."). To sustain such a claim, a plaintiff must show that "(1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer*, 857 F.3d at 798 (citing *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010)). That showing may be made by allegations that: "defendants continued their investigation of plaintiff despite the fact that they knew or should

have known that he was innocent; or defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Costanich*, 627 F.3d at 1111 (citation modified).

In the amended complaint, Cortes-Rueda alleges that on January 3, 2022, defendants falsely represented that he presented an imminent threat providing a form to Salem Hospital entitled "Law Enforcement Attestation." On that form, Cortes-Rueda asserts, Stearns stated that Cortes-Rueda posed a serious and imminent threat to unlawfully detain Cortes-Rueda at Salem Hospital and prolong his medical treatment. Also alleged by Cortes-Rueda is that Stearns asked Salem Hospital to perform unnecessary surgery and treatment to obtain a bullet that defendants previously obtained from his wallet. (Am. Compl. at 11, ECF 47.).

As currently pleaded, Cortes-Rueda's allegations are conclusory. Lacking in the amended complaint are factual details about why the attestation signed by Stearns was false, or how Stearns knew or should have known of Cortes-Rueda's innocence at the time it was signed. The amended complaint does not allege facts connecting Sloan or Devoe to the attestation and thus fails to allege their personal participation. Should Cortes-Rueda choose to file a second amended complaint, he needs to include additional factual details about each defendant's involvement and what they knew about his innocence to show that his deliberate fabrication claim is plausible.

**6. abuse of process**

To state a claim for abuse of process under Oregon law, Cortes-Rueda must plead (1) an ulterior purpose, (2) "a willful act in the use of the process not proper in the regular conduct of the proceeding," *Larsen v. Credit Bureau, Inc. of Ga.*, 279 Or. 405, 408 (1977), and (3) "an actual arrest or a seizure of property," *Reynolds v. Givens*, 72 Or. App. 248, 256 (1985). *See also*

*Voltage Pictures, LLC v. Blake*, No. 3:14-CV-1875-AC, 2015 WL 9272880, at *4 (D. Or. Dec. 17, 2015) (stating elements of an abuse of process claim under Oregon law); *Lee v. Mitchell*, 152 Or. App. 159, 179 (1998) (approving of *Reynolds*).

Cortes-Rueda alleges in the amended complaint that on January 3, 2022, defendants engaged in the abuse of process by providing the previously mentioned "Law Enforcement Attestation" in which Stearns stated that Cortes-Rueda posed a serious and imminent threat for the improper purpose of unlawfully detaining him. Also alleged by Cortes-Rueda is that defendants used the attestation to ensure that WPD was notified before his discharge from the hospital. Cortes-Rueda was arrested at the hospital on January 5, 2022. (Am. Compl. at 8, 11, 31, ECF 47.)

As with his deliberate fabrication claim, Cortes-Rueda's allegations about the attestation lack factual details about why it was false, that Stearns knew or should have known about his innocence, or that detaining him was improper under the circumstances. Cortes-Rueda also neglects to plead any facts connecting Sloan and Devoe to the attestation. Should Cortes-Rueda file a second amended complaint, he needs to provide additional factual details to show that his abuse of process claim against Sloan, Stearns, and Devoe is plausible.

**7. *Miranda* rights violation**

Cortes-Rueda's amended complaint also asserts that Stearns failed to advise him of his *Miranda* rights before questioning him. Failing to advise a person of their *Miranda* rights does not, without more, violate a plaintiff's constitutional rights and cannot be grounds for a claim under 42 U.S.C. § 1983. Grounds for a § 1983 action alleging a *Miranda* violation cannot exist if a coerced statement is not "used" in a criminal case. *Chavez v. Martinez*, 538 U.S. 760, 772

(2003). Further, a "coerced statement has been 'used' in a criminal case when it has been relied upon to file formal charges against the declarant, to determine judicially that the prosecution may proceed, and to determine pretrial custody status." *Stoot v. City of Everett*, 582 F.3d 910, 925 (9th Cir. 2009).

Cortes-Rueda's amended complaint does not allege that any un-*Mirandized* statements he made to defendants were "used" against him in one of the ways set out in *Stoot*, and his *Miranda*-violation claim is therefore deficient in that respect.

**8. Article I, section 9**

"The Oregon Supreme Court has specifically held that claims for damages may not be brought directly under the Oregon Constitution." *Gooding v. Zuercher*, No. 3:18-cv-00015-YY, 2018 WL 4658710, at *4 (D. Or. July 23, 2018), *adopted by*, 2018 WL 4658828 (Sept. 27, 2018) (dismissing claim under Article 1, section 9 of the Oregon Constitution) (citing *Hunter v. City of Eugene*, 309 Or. 298, 303 (1990) ("Oregon's Bill of Rights provides no textual or historical basis for implying a right to damages for constitutional violations.")). "There is no private right of action for damages under the Oregon Constitution." *Real Est. Exch., Inc. v. Brown*, No. 3:20-cv-02075-HZ, 2021 WL 5855660, at *8 (D. Or. Dec. 9, 2021). To the extent that Cortes-Rueda seeks damages for violations of the Oregon Constitution, he has no cause of action.

## CONCLUSION

As explained above, plaintiff's motion for leave to amend (ECF 47) is GRANTED; defendants' motion to dismiss the original complaint (ECF 42) must be DENIED as MOOT. Plaintiff's motion for entry of default (ECF 51) is DENIED.

Plaintiff is ORDERED to file a Second Amended Complaint that incorporates the court's rulings discussed before or on October 15, 2026. In anticipation of plaintiff's compliance with the court's Order to Amend, defendants' motion to dismiss (ECF 50) is DENIED as MOOT, with leave to refile.

DATED: September 16, 2026.

JEFF ARMISTEAD
United States Magistrate Judge